## Irwin *against* Potter.

When special matter is offered by way of set-off, it should set forth, with reasonable certainty, the grounds of the plaintiff's liability.

Suit is brought on a promissory note, given to reimburse to the plaintiff the defendant's proportion of moneys, which had been advanced towards the payment of the costs and expenditure incurred in the purchase of lands on the joint account of themselves and others. A division of the lands was afterwards made by three persons, chosen by them for that purpose. *Held,* that an offer by the defendant to prove, either as ground of defence or as matter of set-off, that in the division of the lands, conducted under the management of the plaintiff, an erroneous basis was substituted for that provided in the instrument creating him a trustee, and in the subsequent instrument providing for the division, without specifying any acts of fraud or circumvention on his part, is not admissible.

It is competent, however, for the defendant to show that the sum advanced

[Irwin v. Potter.]

by the plaintiff for the defendant, and forming the consideration of the note, was paid out of the partnership funds, and not with the plaintiff's money.

WRIT of error to the court of common pleas of *Alleghany* county, in a suit upon a promissory note brought by Elderkin Potter, the plaintiff below, against John H. Irwin, the defendant below, in which a verdict and judgment passed for the plaintiff below.  The plaintiff, Elderkin Potter, and the defendant, John H. Irwin, together with certain other persons, representatives of Waugh deceased, were creditors of John Hoge, late of Washington county, who died seised of lands in Beaver and Mercer counties, Pennsylvania, and having obtained judgments against the administrators of Hoge in Washington county, issued executions and levied on these lands.  On the 13th of April 1829, by an instrument under seal, Potter and Irwin agreed to purchase these lands and hold them in equal shares, designating a person to fix the price and bid in the lands for them.  They further agreed that the purchase money should be paid equally : the costs of the sale to be advanced by the parties in equal portions, and to be accounted for on the final adjustment of the matter.

On the 25th of May 1830, Potter and Irwin and David Hoge, George Baird and William Waugh, the other representatives of Waugh, by another instrument in writing under their hands and seals, recite the foregoing instrument, and declare the true intent and meaning thereof to be, that all the lands purchased in Beaver and Mercer counties shall be for the use and benefit of all the parties to this agreement, on terms of perfect equality, in proportion to the amount of the several claims of the parties respectively : and all the necessary expenses, taxes, payments and advances shall be paid and made in the same proportion : that is, as the aggregate amount of the claims of the parties is to the quantity purchased, so is each individual claim to its share of that quantity : the partition or division to be made according to quantity and quality.  They further agreed that Potter should receive the title for the lands in trust for the parties with power to sell.

By another agreement dated the 11th of October 1820, the same parties agreed that certain persons named therein should divide the tract of land called Beaver bottom in Beaver county, belonging to them in consequence of their purchase at sheriff's sale, containing one thousand acres, according to the principles of the foregoing agreement : if any difficulty arose among said persons, it should be decided by J. Allison, Esq. : that on the report of these persons, designating the quantity of acres by metes and bounds to which each of the parties was entitled, Potter, in whom the legal title then was in trust for the parties, should convey and release to each their respective shares.  It was likewise agreed, that the above named persons should be governed in the same manner as if appointed by the court of common pleas in pursuance of a writ of partition to divide the estate.

[Irwin v. Potter.]

On the 10th of November 1830, the defendant gave to the plaintiff his promissory note, under seal, promising, one day after date, to pay to him or his order 616 dollars, for cash lent, with interest until paid. The plaintiff, by a contemporaneous instrument, certified that the defendant had that day given him his note for moneys advanced on account of lands purchased in Pennsylvania, amount 616 dollars, predicated upon a statement furnished by John Marshall, Esq. ; and it was understood that if there were any errors in that statement which would affect the amount of said note, the same were to be corrected. Annexed to this was the following statement of items signed by the plaintiff:

| | | |
|---|---:|---:|
| 1830, October 6th, costs paid J. Marshall for Dr Irwin, | $470 | 22 |
|       "   " David Mims, | 63 | 30 |
| His share of taxes paid in Mercer county, May 25th, 1830, being in all 383 dollars and 71¼ cents, and money paid sheriff of Beaver county office fees, &c. Also fees to J. Marshall, in all 563 dollars and 50 cents. His share, | 263 | 33 |
| Paid Mrs Irwin's expenses to Bedford, | 21 | 00 |
| | 817 | 85 |
| Deduct costs paid heretofore, | 201 | 85 |
| | $616 | 00 |

The defendant, under his plea of payment, after offering to give in evidence the foregoing documents, offered to follow up that evidence by proof, that in the actual division of the Beaver tract, conducted under the management of Potter, an erroneous basis was substituted for that provided in the instrument creating him a trustee, and in the subsequent instrument for the division of that particular tract. By the terms of the last agreement, the division was to be final and conclusive as to the land. The defendant asked permission to establish the amount of loss actually resulting to him from the breach of faith, on the part of the trustee, by showing the quantity of land assigned to him, compared with that which he ought rightfully to have obtained : and by proof of its value in money, he is prepared to establish some of the erroneous principles which were made to enter into said distribution, and by which a result was obtained contrary to justice and good faith. This evidence was offered, either as matter of defence to the note, or as matter of set-off, authorizing the jury to find a balance in the defendant's favour. This evidence was objected to by the plaintiff, and overruled by the court, who filed a bill of exceptions.

The defendant further offered in evidence a statement in the handwriting of the plaintiff to show that certain claims alleged to have been paid by the plaintiff out of his own funds, on account of the lands held in partnership (constituting one of the claims for which the note was given), were in truth discharged out of certain part-

III.—KK

nership moneys, for which the plaintiff never debited himself, and consequently he could not demand a contribution from defendant. This evidence being objected to by the plaintiff, was also rejected by the court, and another exception taken.

*Watts*, for plaintiff in error.

By the certificate accompanying the note, which was the basis of the plaintiff's action, the defendant below reserved the right of controverting the correctness of the statement of account upon which the note was predicated, a privilege that the law would have secured to him without a special agreement. It seems manifest then, that the court below erred in rejecting the proffered evidence, being, as it were, of the very essence of the contract; and showing, under the equitable maxim, *ex æquo et bono*, that the plaintiff ought not to recover.

The facts proposed to be proved in the second bill of exceptions were still more strangely excluded from the consideration of the jury. Shaw *v.* Badger, 12 *Serg. & Rawle* 275; Light et al. *v.* Stoever's Executors, *Ibid.* 432; Metzgar *v.* Metzgar, 1 *Rawle* 230; Carpenter *v.* Groff, 5 *Serg. & Rawle* 162.

*Metcalf*, for defendant in error, contended, that the proposition set forth in the second bill of exceptions was unintelligible, and did not specify where the alleged mistake existed. The consideration of the note was funds advanced by Potter for Irwin in the purchase of the lands in Beaver and Mercer counties, agreeably to the stipulations between the heirs. Afterwards there was a final and binding division of the lands among the heirs, in which division all previous transactions between them were included. After this binding and solemn settlement, it is too late to pass again in review the transactions which it embraced, and to inquire whether it involved mistakes in the calculation, or errors in the agency of the plaintiff below.

*Biddle*, in reply.

Did the facts recited in the first bill of exceptions taken together, if established, make out a claim to equitable relief? It is to be assumed here, that whatever is stated in the offer could have been proved, and this court cannot listen to suggestions as to the mode in which it might have been repelled or explained. The object was to show that the agency, out of which the claim arose, had been perverted into an engine of injustice. The circumstance of a note having been given cannot restrain the defence. Even an express stipulation, not to make a set-off, will be disregarded. 2 *Esp. Rep.* 626; 13 *Ves. Jun.* 179. The cases cited fully establish that, in Pennsylvania, where the matter offered involves, not feeling, but figures, and data are presented from which the jury can reach a conclusion by arithmetical computation, the evidence must be received whether as set-off or ground for equitable relief. The case in 8 *Serg. & Rawle* 88,

[Irwin v. Potter.]

is of malfeasance successfully urged against a claim for services as housekeeper. If the captain and part owner of a ship should make away with the property, and then sue his associates for wages paid and expenses incurred, could they not go into the history of his misconduct, or may he impudently repel investigation and turn them round to a libel against the vessel? It is said that the partition, if unfairly made, is not binding; but surely it is not for the plaintiff to dictate the mode in which redress may be sought against his misconduct. By agreement, the partition was to be final and conclusive. The defendant, therefore, may not choose, or may not be able, to disturb purchasers who have relied on this stipulation, but has a right to such redress against the agent as he would against an attorney who had abused a discretionary power, and irrevocably committed his client.

The second point is too plain for argument, as the court has intimated.

The opinion of the Court was delivered by

SERGEANT, J.—1st. When special matter is offered by the defendant by way of set-off, or in diminution of the plaintiff's demand, it should set forth with reasonable certainty the grounds of the plaintiff's liability. It has been held that the notice of set-off need not be so certain, and by no means so formal as a declaration, but it must describe the demand with reasonable certainty, so as not to take the plaintiff by surprise. Gogel *v.* Jacoby, 5 *Serg. & Rawle* 120; Lewis *v.* Culbertson, 11 *Serg. & Rawle* 50. It would be dangerous to allow a deviation from this rule and to permit a defendant, upon the statement of remote and conjectural possibilities, to enter into the pursuit of a defence, rather than the proof of one. In the present case the demand arises on a note given to reimburse to the plaintiff the defendant's proportion of moneys, which had been advanced by the plaintiff towards payment of liens, taxes, costs and charges incurred in the purchase of lands on joint account under the agreements of May and October 1830: accompanying which is a stipulation by the plaintiff that the defendant might correct any errors in the statement of Mr Marshall, by which the sum of 470 dollars in the account was adjusted, a right which the defendant would have possessed by law, as to this and all other items, without an express reservation. To repel the claim on the note, the defendant offered, at the trial, to give in evidence, " that in the actual division of the Beaver tract, conducted under the management of Potter, an erroneous basis was substituted for that provided in the instrument creating him a trustee, and in the subsequent instrument for the division of that tract." But by whom was that erroneous basis adopted? The division was made by third persons chosen for that purpose by the parties: not by the plaintiff; nor had he any control whatever over it: so that if they erred by making a wrong division, it was their act, and not his. It is said the division was to be final and conclusive, and this is the only re-

[Irwin v. Potter.]

medy. If procured by fraud, the partition would not be final. If even unfair and unequal, relief might perhaps have been had, since it was expressly stipulated, that the persons making it should be governed in the same manner as if appointed by the court of common pleas in pursuance of a writ of partition to divide the estate. But be this as it may, it is difficult to understand in what way the plaintiff is implicated in the alleged mistake of the persons making the partition. No act of his is stated; no fraud, practice, or circumvention of his detailed; nor indeed of any one; but the whole of the charge is, simply, that under the plaintiff's management there was an erroneous division by which the defendant was injured, and therefore the defendant should correct it by compelling the plaintiff to pay him the difference in the value of the land he got, from what he ought to have got.

Whether if the plaintiff had done any wrongful act at the time of the partition, subjecting him to the defendant's claim for damages on account of such tort, it would be evidence in this suit, which is brought to recover moneys previously advanced on the defendant's account in the joint purchase of land, is a question on which it is not necessary to express an opinion, as no act of the defendant for which he is liable is pointed out; and the evidence was, therefore, properly overruled.

2d. But the second offer of the defendant ought to have been received. Most of the sum for which the note was given being made up of the defendant's proportion of moneys advanced by the plaintiff on account of lands purchased in partnership, the defendant offered to show that these moneys were in fact paid out of the partnership funds, and not with the plaintiff's money. If so, it is clear the plaintiff ought not to call on the defendant to repay him. How the fact is, it is for the jury to decide. No opinion is meant to be expressed concerning it. Indeed the evidence is not before us; but if the defendant could establish his averment, he ought to have been admitted to do so.

Judgment reversed, and a *venire facias de novo* awarded.